ABDUL R. MOHAMOUD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mohamoud v. Commissioner
Docket No. 14519-92
United States Tax Court
T.C. Memo 1994-464; 1994 Tax Ct. Memo LEXIS 469; 68 T.C.M. (CCH) 735; September 20, 1994, Filed *469 An Order of Dismissal and Decision will be entered for respondent. Abdul R. Mohamoud, pro se. For respondent: Carmino J. Santaniello, Jr.
COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6653(b)(1)
6661
1987
$ 37,213
$ 27,910
50% of the
--
$  9,303
interest due
on $ 37,213
1988
46,306
--
--
$ 34,730
11,576
Sec.
Sec.
6663
6651(a)(1)
1989
12,301
$ 9,226
$ 3,581
--
--
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner failed to appear for trial or to present evidence to satisfy his burden of proof. Respondent's motion to dismiss for lack of prosecution will be granted, and the deficiencies determined by respondent and the additions to tax under sections 6651(a)(1) and 6661 are therefore determined against him. Rules 123, 142(a), 149. Respondent presented documentary *470 evidence and testimony in support of the additions to tax under sections 6653(b) and 6663 for fraud. Sec. 7454(a); Rule 142(b). FINDINGS OF FACT Some of the facts have been stipulated pursuant to Rule 91(f), and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Hartford, Connecticut, at the time he filed his petition in this case. He filed his Federal income tax returns for 1987, 1988, and 1989 with the Internal Revenue Service Center at Andover, Massachusetts. Petitioner reported his income and deductions for the years in issue using the cash receipts and disbursements method of accounting. On September 26, 1990, and October 2, 1990, petitioner and respondent, respectively, timely executed a Form 872, Consent to Extend the Time to Assess Tax, extending the period of limitations for petitioner's taxable year 1987 to December 31, 1991. On June 19, 1991, and July 1, 1991, petitioner and respondent, respectively, timely executed another Form 872 for petitioner's taxable year 1987, further extending the period of limitations for that year until June 30, 1992. From 1987 through 1989, petitioner was the president and sole shareholder *471 of Sanaag, Inc. (Sanaag), a corporation formed under the laws of the State of Connecticut in 1984. Sanaag operated a medium-sized grocery store under the name Sigourney Market on Ashley Street in Hartford, Connecticut. From 1987 through 1989, Sanaag maintained its business checking account at Connecticut National Bank. Petitioner also maintained a personal account at Connecticut National Bank and maintained two personal accounts at Connecticut Bank & Trust. Petitioner purchased Sigourney Market on June 1, 1984, for $ 155,000, which was financed by $ 80,000 of his own funds and a loan in the amount of $ 82,000 obtained through the Small Business Administration. On or about October 20, 1988, petitioner purchased the real property on which the market was located (the Ashley Street property) for $ 200,000. Petitioner's purchase of the Ashley Street property was financed entirely with a commercial loan from Connecticut National Bank. On March 1, 1992, petitioner quitclaimed his interest in the Ashley Street property to Said Sheikh Dalmer for $ 1.00 consideration. On November 21, 1988, petitioner purchased a two-family residence located on Barker Street in Hartford (the Barker Street *472 property) for the purchase price of $ 199,000. Petitioner recorded the deed to the Barker Street property in his own name. Petitioner made a $ 15,000 downpayment from his personal checking account at Connecticut National Bank towards the purchase of the Barker Street property. The balance of the purchase price of the Barker Street property was paid with $ 135,568.61 from petitioner's personal bank accounts and a promissory note and mortgage in the amount of $ 49,000. Petitioner satisfied his obligations under the promissory note and mortgage on or about January 29, 1990. In September 1989, an internal revenue agent began a civil examination of Sanaag's corporate income returns for 1987 through 1989. The agent concluded her examination of Sanaag on May 23, 1991. During her audit of Sanaag, the agent observed that the income reported by petitioner on his individual tax returns for 1987 through 1989 appeared to be inconsistent with petitioner's increases to net worth during those years. Based on her observations, in October 1990, the agent expanded the examination to include petitioner's individual tax returns for 1987 through 1989. During her audit, the agent requested that *473 petitioner provide her with bank records for the 3 years in issue. Petitioner provided only some records for 1988, stating that he had destroyed the other records. The agent then served summonses on the banks and secured microfilm copies of monthly statements, deposit slips, and deposited items with respect to petitioner's three personal bank accounts. The agent's analysis of the bank accounts determined that petitioner made total deposits into his personal bank accounts of $ 217,032.53 in 1987, $ 337,579.30 in 1988, and $ 158,325.76 in 1989. Those deposits included regular and periodic cash deposits amounting to $ 166,598 in 1987, $ 119,870 in 1988, and $ 70,042 in 1989. The analysis of the bank deposits identified and eliminated very few transfers between petitioner's bank accounts. The agent interviewed petitioner to determine why the substantial amounts of cash that were deposited into his personal bank accounts did not appear to be reported on his income tax returns. Petitioner stated that he did not have any cash on hand on December 31, 1986, and he did not have nontaxable sources of income, such as gifts, loans, or inheritances. Petitioner falsely stated that cash deposited *474 into his personal bank accounts was received from Somalians residing in the United States and transmitted outside of the United States on behalf of these individuals. In support of his explanation, petitioner presented to the agent approximately 30 false and fraudulent affidavits. Petitioner falsely stated to the agent that he never made any personal use of the deposited funds, when in fact the majority of the cash deposits had been used to acquire assets in his own name, such as the Barker Street property, and for personal living expenses. Certain of the funds had been transferred by wire to his nephew in London, England. Petitioner admitted that he did not maintain any records with respect to the cash deposited to his three personal bank accounts. Respondent determined that the cash that was deposited to petitioner's three personal bank accounts during the years in issue represented taxable income, presumably diverted from the grocery store receipts of Sigourney Market. An authorized representative of petitioner admitted during the course of the audit that a portion of the cash deposits appeared to represent taxable income. After the petition was filed in this case, petitioner *475 left the United States and failed and refused to provide his whereabouts to his then attorney of record. Unable to proceed without petitioner's cooperation, the attorney was permitted to withdraw from the case. OPINION Because of petitioner's default as to issues on which he had the burden of proof, the only issue remaining for decision is whether petitioner is liable for the additions to tax for fraud. The addition to tax for fraud is a civil sanction intended to safeguard the revenue and to reimburse the Government for the heavy expense of investigation and for the loss resulting from a taxpayer's fraud. . Respondent has the burden of proving, by clear and convincing evidence, an underpayment and that some part of the underpayment was due to fraud. See sec. 6653(b)(1) and (2). Respondent erroneously asserts that the requirement that respondent establish an underpayment for each year has been met by the granting of respondent's motion to dismiss in the full amount of each deficiency by reason of petitioner's default. Petitioner's default as to the deficiency is not clear and convincing evidence *476 of an underpayment. It is well settled that respondent, in proving fraud, cannot rely on petitioner's failure to discharge the burden of proving error in the determination of deficiencies. , affd. ; ; ; see . The cases cited by respondent do not hold otherwise, in that in each of them direct proof of an underpayment was presented. Nonetheless, evidence of unexplained bank deposits may satisfy respondent's burden of proof. See ; ; , affd. without published opinion . Even in a criminal tax evasion case, where the Government bears the greater burden *477 of proof beyond a reasonable doubt, once the Government proves unreported income, the taxpayer has the burden of coming forward with evidence. ; . Thus, in this case respondent's bank deposits analysis constitutes clear and convincing evidence of unreported income over the 3 years in issue. In addition, respondent has shown that petitioner failed to keep adequate records and that false statements were made by petitioner to respondent's agents during the course of the audit. Such actions are "badges of fraud" sufficient to satisfy respondent's burden of proving petitioner's fraudulent intent. See ; . We conclude that respondent has presented clear and convincing evidence of fraud. An Order of Dismissal and Decision will be entered for respondent.